**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**JAMES JONES,**
     **Petitioner,**

**v.**                                   **Case No. 5:16cv313-WTH/CAS**

**JULIE L. JONES,**
     **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On or about November 10, 2016, Petitioner James Jones, proceeding

pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254.   ECF No. 1.   On August 25, 2017, Respondent filed an answer

and exhibits.   ECF No. 16.   Petitioner filed a reply on December 11, 2017.

ECF No. 25.

The matter was referred to the undersigned United States Magistrate

Judge for report and recommendation pursuant to 28 U.S.C. § 636 and

Northern District of Florida Local Rule 72.2(B).   After careful consideration

of all issues raised, the undersigned has determined that no evidentiary

hearing is required for disposition of this case.   *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.   For the reasons stated herein, the

pleadings and attachments before the Court show Petitioner is not entitled

to federal habeas relief, and this § 2254 petition should be denied.

## Background and Procedural History

By information filed December 22, 2010, in Bay County Circuit Court case number 10-2155B, the State of Florida charged Petitioner James W. Jones with two counts of lewd or lascivious molestation involving victim M.B., a person less than twelve (12) years old, a life felony in violation of section 800.04(5)(a)-(b), Florida Statutes, and one count of lewd or lascivious exhibition involving victim M.B., a person less than sixteen (16) years old, a second degree felony in violation of section 800.04(7)(a)-(b), Florida Statutes, in connection with events that took place on or between September 29, 2004, and July 13, 2010,.   Ex. A at 22-23.[1]   Jones proceeded to a jury trial on October 14, 2011, presided over by Judge Brantley S. Clark, Jr.; the jury found him guilty as charged on each count. *Id.* at 157-58; Exs. D, E.   Jones testified in his defense during the trial. Ex. F at 136-58.   At proceedings held December 1, 2011, Judge Clark adjudicated Jones guilty and sentenced him to concurrent terms of life in prison on the first two counts, and a concurrent term of fifteen (15) years in

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 16.

Case No. 5:16cv313-WTH/CAS

prison on the third count, with credit for time served.   Ex. A at 164-73; Ex.

D.   The court also designated Jones a sexual predator.   Ex. D at 279-80.

Jones appealed his judgment and sentence to the First District Court

of Appeal (DCA), assigned case number 1D11-6501.   Ex. A at 177; *see*

Exs. G (Initial Brief), H (Answer Brief).   On December 17, 2012, the First

DCA per curiam affirmed the case without a written opinion.   Ex. I; Jones

v. State, 103 So. 3d 148 (Fla. 1st DCA 2012) (table).

On March 25, 2013, Jones filed a motion for postconviction relief

pursuant to Florida Rule of Criminal Procedure 3.850.   Ex. K at 209-40.

By order on June 17, 2013, Judge Clark struck the motion as facially

insufficient but with leave to amend within thirty (30) days pursuant to

Spera v. State, 971 So. 2d 754 (Fla. 2007).   Ex. K at 241.   Jones filed an

amended Rule 3.850 motion on August 29, 2013.   Ex. K at 242-52.   He

then filed a second amended Rule 3.850 motion, raising three claims of

ineffective assistance of counsel.   Ex. K at 258-68.   Judge Clark held an

evidentiary hearing on June 27, 2014, and July 10, 2014, during which

Jones was represented by counsel.   Ex. L.   Thereafter, on August 19,

2014, Judge Clark denied post-conviction relief.   Ex. K at 310-33.

Jones appealed the denial of post-conviction relief and filed an initial

brief in case number 1D14-4611.   Ex. N.   The State filed an answer brief,

Ex. O, and Jones filed a reply brief, Ex. P.   The First DCA per curiam

affirmed the case without a written opinion on February 15, 2016.   Ex. Q at

1; Jones v. State, 185 So. 3d 1238 (Fla. 1st DCA 2016) (table).   The

mandate issued March 14, 2016.   Ex. Q at 2.

As indicated above, Jones filed a § 2254 petition in this Court on or

about November 10, 2016.   ECF No. 1.   He raises ten grounds, almost all

of which allege ineffective assistance of counsel (IAC):

(1) **Trial Court Error**:   "Judge Clark's finding that there was
sufficient evidence to prove same fact similar evidence
involved an unreasonable application of the facts in light of
the evidence in violation of Petitioner's Fifth, Sixth, and
Fourteenth Amendment rights of the United States
Constitution and Haines v. Kerner, 404 U.S. 519."   *Id.* at 5.

(2) **IAC**:   "Judge Clark would have found that trial counsel
rendered [in]effective assistance of counsel by not
motioning for mistrial where Williams Rule evidence was
admitted thereby violating Petitioner's Fifth, Sixth, and
Fourteenth Amendment rights of the United States
Constitution and Haines v. Kerner, 404 U.S. 519."   *Id.* at 7.

(3) **IAC**:   "Judge Clark's finding that trial counsel's independent
recollection and normal practice to advise clients of any plea
offers rendered counsel [in]effective in violation of
Petitioner's 5th, 6th, and 14th Amendment rights of the

United States Constitution and Haines v. Kerner, 404 U.S. 519." *Id.* at 9.

(4) **IAC**:   "Judge Clark's finding that trial counsel's independent recollection and normal practice to advise clients of the maximum penalty they face based on a general statement from a secretary via e-mail rendered counsel [in]effective in violation of Petitioner's 5th, 6th, and 14th Amendment rights of the United States Constitution and Haines v. Kerner, 404 U.S. 519." *Id.* at 11.

(5) **IAC**:   "Judge Clark's finding that trial counsel was not ineffective for not moving for a competency determination was an unreasonable application of the facts in light of the evidence and facts in violation of Petitioner's 5th, 6th, and 14th Amendment rights of the United States Constitution and Haines v. Kerner, 404 U.S. 519."   *Id.* at 13.

(6) **IAC**:   "Judge Clark would have found that trial counsel rendered [in]effective assistance of counsel where counsel failed to argue lack of intent which violated Petitioner's 5th, 6th, and 14th Amendment rights of the United States Constitution and Haines v. Kerner, 404 U.S. 519."   *Id.* at 15.

(7) **IAC**:   "Judge Clark would have found that trial counsel rendered [in]effective assistance of counsel where counsel failed to request competency hearings which violated Petitioner's 5th, 6th, and 14th Amendment rights of the United States Constitution and Haines v. Kerner, 404 U.S. 519."   *Id.* at 17.

(8) **IAC**:   "Judge Clark would have found that trial counsel rendered [in]effective assistance of counsel [when counsel] failed to object to the prosecutor's prejudicial comments which violates Petitioner's 5th, 6th, and 14th Amendment rights of the United States Constitution and Haines v.

Kerner, 404 U.S. 519." *Id.* at 19.

(9) **IAC**: "Judge Clark would have found that trial counsel rendered [in]effective assistance of counsel when counsel failed to present mitigation factors during sentence[ing] in an unreasonable application of the facts in light of the evidence thereby violating Petitioner's 5th, 6th, and 14th Amendment rights of the United States Constitution and Haines v. Kerner, 404 U.S. 519." *Id.* at 21.

(10) **Cumulative IAC**: "Judge Clark would have found that the cumulative effect did not render Petitioner's trial fundamentally unfair is an unreasonable application of the facts in light of the evidence thereby violating Petitioner's 5th, 6th, and 14th Amendment rights of the United States Constitution and Haines v. Kerner, 404 U.S. 519." *Id.* at 23.

Respondent filed an answer and exhibits. ECF No. 16. Petitioner filed a reply. ECF No. 25.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody. Section 2254(d) provides, in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).   "This is

a 'difficult to meet' and 'highly deferential standard for evaluating state-

court rulings, which demands that state-court decisions be given the benefit

of the doubt.'"   Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562

U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

This Court's review "is limited to the record that was before the state court

that adjudicated the claim on the merits."   *Id.*

For claims of ineffective assistance of counsel (IAC), the United

States Supreme Court has adopted a two-part test:

First, the defendant must show that counsel's performance was deficient.   This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense.   This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Case No. 5:16cv313-WTH/CAS

Strickland v. Washington, 466 U.S. 668, 687 (1984).   To demonstrate

ineffectiveness, a "defendant must show that counsel's performance fell

below an objective standard of reasonableness."   *Id.* at 688.   To

demonstrate prejudice, a defendant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."   *Id.* at 694.   "A reasonable

probability is a probability sufficient to undermine confidence in the

outcome."   *Id.*   For this Court's purposes, importantly, "[t]he question 'is

not whether a federal court believes the state court's determination' under

the Strickland standard 'was incorrect but whether that determination was

unreasonable – a substantially higher threshold.'"   Knowles v. Mirzayance,

556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473

(2007)).   "And, because the Strickland standard is a general standard, a

state court has even more latitude to reasonably determine that a

defendant has not satisfied that standard."   *Id.*   It is a "doubly deferential

judicial review that applies to a Strickland claim evaluated under the

§ 2254(d)(1) standard."   *Id.*

### Ground 1: Trial Court Error – Allowing Similar Fact Evidence

In his first ground, Petitioner Jones asserts the state trial court

deprived him of his constitutional rights by allowing the prosecution to present similar fact evidence.   ECF No. 1 at 5.   Jones raised this as the only point in his direct appeal:   "The trial court erred in introducing evidence of collateral crimes against T.B. and H.B. because the alleged acts were not sufficiently similar to be relevant and not unduly prejudicial under the proper legal standards."   Ex. G at i, 13.   The First DCA affirmed the appeal without a written opinion.   Ex. I.   This constitutes a ruling on the merits and is entitled to AEDPA deference.   *See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

As Respondent indicates, however, the claim presented to the state court was purely one of state law.   ECF No. 16 at 17.   Under Florida law, similar fact evidence of other crimes, called Williams Rule evidence, "is admissible when relevant to prove a material fact in issue," such as motive, intent, preparation, or plan.   Fla. Stat. § 90.404(2)(a); Williams v. State, 110 So. 2d 654 (Fla. 1959); Lamontagne v. Sec'y, Dep't of Corr., 433 F. App'x 746, 749 (11th Cir. 2011).   In this case, on September 20, 2011, the State filed, in accordance with section 90.404(2), Florida Statutes, a "Notice of State's Intent to Use Evidence of Other Crimes, Wrongs, or Acts," involving H.B. and T.B., siblings of the victim in this case, M.B.   Ex. A at

32-22.   On October 5, 2011, in response, defense counsel filed a motion in

limine seeking an order excluding "any collateral crimes evidence from the

trial of this cause."   *Id.* at 35.   The defense motion cites no authority, state

or federal.   *Id.*

The trial court held a hearing on October 13, 2011, the day before the

trial, during which all three siblings testified; arguments continued to the

morning of the trial.   Ex. C; Ex. E at 7-16.   During the hearing, the

prosecutor referenced only state cases and statutory provisions.   Ex. C at

256-59; Ex. E at 9-11.   Defense counsel argued the collateral evidence

should be excluded and discussed state case law, but made no references

to any federal authority.   Ex. C at 259-60; Ex. E at 11-14.   The trial court

ruled the evidence admissible.   Ex. E at 15-16.   As indicated above, on

direct appeal, counsel raised a point challenging the admission of this

evidence (citing only state law); the First DCA affirmed the case without a

written opinion.

To the extent this ground alleges a claim of state law error,

specifically a state trial court evidentiary ruling, "federal habeas corpus

relief does not lie for errors of state law."   Lewis v. Jeffers, 497 U.S. 764,

780 (1990); *see* Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (explaining

that errors that do not infringe on defendant's constitutional rights provide

no basis for federal habeas corpus relief).   "A state's interpretation of its

own laws or rules provides no basis for federal habeas corpus relief, since

no question of a constitutional nature is involved."   Carrizales v.

Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983); *accord, e.g.*,

McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992).   "Indeed,

the general rule is that a federal court will not review a trial court's actions

with respect to the admission of evidence."   Shaw v. Boney, 695 F.2d 528,

530 (11th Cir. 1983).   "A state evidentiary violation in and of itself does not

support habeas corpus relief" and "[b]efore such relief may be granted, the

violation must rise to the level of a denial of 'fundamental fairness.'"   *Id.*; *see*

Jacobs v. Singletary, 952 F.2d 1282, 1296 (11th Cir. 1992) ("We review

state court evidentiary rulings on a petition for habeas corpus to determine

only 'whether the error, if any, was of such magnitude as to deny petitioner

his right to a fair trial.' . . . Erroneously admitted evidence deprives a

defendant of fundamental fairness only if it was a 'crucial, critical, highly

significant factor' in the [defendant's] conviction." (citations omitted)); Link

v. Tucker, 870 F. Supp. 2d 1309, 1324-30 (N.D. Fla. 2012) (district court

order adopting magistrate judge's report and recommendation to deny

§ 2254 petition alleging, among other things, state trial court abused its discretion by admitting evidence of petitioner's prior conduct).

A review of the record reflects that admission of the challenged evidence in this case does not appear erroneous under Florida state law. *See* Ex. E at 15-16, 79-80; § 90.404(2)(a), Fla. Stat. (2011); s*ee, e.g.*, Buenoano v. State, 527 So. 2d 194, 197 (Fla. 1988) ("Under the Williams rule evidence of other crimes, wrongs and acts is admissible if it is relevant to and probative of a material issue even though the evidence may indicate the accused has committed other uncharged crimes or may otherwise reflect adversely upon the accused's character.   Section 90.404(2)(a), Florida Statutes, (1983), codifies the ruling in Williams v. State and lists the purposes for which such evidence is deemed to be admissible: proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.").   Moreover, even if erroneous, such admission did not deprive Jones of a fundamentally fair trial, as the State presented substantial evidence of Jones' guilt through the victim's testimony and identification.   Ex. E at 32-42.

Finally, Jones has not pointed to any U.S. Supreme Court precedent holding that the admission of this type of prior act evidence in these

circumstances violates the federal constitutional guarantee of due process and a fair trial.   *See* Link, 870 F. Supp. 2d at 1328-29.   Therefore, he has not shown the state court's rejection of his claim, assuming it was fairly presented, was contrary to or an unreasonable application of clearly established federal law.   *See id.*   This ground should be denied.

### Ground 2:   IAC – No Motion for Mistrial

In his second ground, Petitioner Jones asserts that defense counsel provided ineffective assistance by not moving for a mistrial when the state trial court admitted the Williams Rule evidence.   ECF No. 1 at 7.   Although Jones presented this ground in his initial Rule 3.850 motion, Ex. K at 209-40, which the state court struck as facially insufficient, Jones did not raise it in his amended Rule 3.850 motion or second amended Rule 3.850 motion, for which the state post-conviction trial court held an evidentiary hearing and on which that court ultimately denied relief.   Accordingly, this ground is unexhausted and procedurally defaulted.   *See* O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."); *see also, e.g.*, McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (explaining exhaustion requirement: "[T]o ensure that state courts have the

first opportunity to hear all claims, federal courts have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."); Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable."); Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010) (explaining "[a] federal court may still address the merits of a procedurally defaulted claim if the petitioner can show cause for the default and actual prejudice resulting from the alleged constitutional violation" or if fundamental miscarriage of justice exists because "'a constitutional violation has probably resulted in the conviction of one who is actually innocent'" (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986))).

Assuming Jones demonstrated cause and prejudice to excuse the procedural default, this ground lacks merit and should be denied.   As explained in the analysis of Ground 1, *supra*, the state court did not abuse its discretion in admitting the Williams Rule evidence.   Accordingly, defense counsel did not perform deficiently by not moving for a mistrial.

## Ground 3:   IAC – Plea Offer

In his third ground, Petitioner Jones asserts trial counsel provided ineffective assistance regarding conveyance of plea offers.   ECF No. 1 at 9.   Respondent indicates Petitioner raised this claim in state court as the first ground in his second amended Rule 3.850 motion.   ECF No. 16 at 29; *see* Ex. K at 262.   The state post-conviction court denied the claim after an evidentiary hearing and made the following findings:

> The Defendant argues that his trial counsel Ann Grabner was ineffective for failing [to] convey a plea offer of three years in prison.   He alleges that he only became aware of the three year offer after his conviction.   He further alleges that had he been properly advised, he would have accepted the offer, the State would not have withdrawn it, the Court would have accepted the plea, and he would not have received a life sentence.

> To warrant an evidentiary hearing under Rule 3.850, a defendant must allege facts sufficient to establish a prima facie case under the two-prong test set forth in <u>Strickland v. Washington</u>, 104 S. Ct. 2052 (1984).   First, the defendant must identify particular acts or omissions by counsel that are outside the broad range of reasonable assistance under prevailing professional standards.   *Id.* at 2066.   Second, the defendant must also demonstrate prejudice, a reasonable probability that, but for trial counsel's error, the result in the case would have been different.   *Id.* at 2068.   A reasonable probability is one sufficient to undermine confidence in the outcome of the case. *Id.*

> In the instant case, the Defendant's allegations in support of his claim in ground one are sufficient to warrant an evidentiary hearing under <u>Alcorn v. State</u>, 121 So. 3d 419, 430 (Fla. 2013) ("[T]he defendant must allege and prove a

reasonable probability, defined as a probability sufficient to undermine confidence in the outcome, that (1) he or she would have accepted the offer had counsel advised the defendant correctly, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.").   Rule 3.850(d) provides, "If an evidentiary hearing is required, the court shall . . . determine the issues, and make findings of fact and conclusions of law with respect thereto."   The burden is on the defendant to prove a claim of ineffective assistance of counsel at an evidentiary hearing on a Rule 3.850 motion.   Pennington v. State, 34 So. 3d 151, 154 (Fla. 1st DCA 2010).   However, once the defendant presents evidence to support the claim, the burden shifts to the State to present contradictory evidence.   *Id.* at 154-55.

At the evidentiary hearing, the Defendant's testimony was essentially consistent with the allegations in his Second Amended Motion.   He testified that his trial counsel Grabner failed to inform him of the State's plea offer of three years in prison until after his trial.   According to him, the only plea offer that was conveyed to him before trial was one for 15 years in prison, with five years probation.   The Defendant's mother also testified, and her testimony was consistent with his testimony on the issue of the three year plea offer and the 15 year plea offer, but was inconsistent insofar as she indicated that the Defendant also mentioned having received a 25 year plea offer. The Court finds that for purposes of Pennington, the Defendant presented sufficient evidence to support his claim, thereby shifting the burden to the State to present contradictory evidence.

Grabner then testified for the State.   According to her testimony, the State made four plea offers to the Defendant: (1) on August 15, 2011, the State offered five years prison, followed by 10 years probation; (2) on August 26, 2011, the

State offered three years prison, followed by two years community control and then eight years probation; (3) on September 30, 2011, the State offered 20 years prison followed by five years probation; and (4) on October 10, 2011, the State offered 15 years prison, followed by five years probation. Grabner did not have an independent recollection of advising the Defendant of these offers, but she indicated that it would have been her "normal practice" to advise a defendant of any plea offers from the State.

Grabner maintained notes in her case file, which were admitted into evidence at the evidentiary hearing without objection. *See* Notes, State's Exhibit 1; Notes, State's Exhibit 2. At the hearing, Grabner testified with respect to her notes concerning the State's plea offers to the Defendant. Her notes indicated that she had conveyed to him the October 10, 2011 plea offer, which included 15 years prison. With respect to the three year plea offer at issue, she testified that she had noted he was "very upset" and "in tears" with that offer, insisting that he did not commit the charged offenses; her notes state as follows:

> ∆ totally upset over plea o:  of August 26th (3 yrs. DOC, 2 yrs. CC, 8 years prob.)  ∆ in tears insisting he did not do it[.]

*See* Notes, State's Exhibit 2.

The Court finds that Grabner's notes sufficiently corroborate her testimony that while she did not have a specific recollection of conveying the State's three year plea offer to the Defendant, her "normal practice" would have been to convey all plea offers. While her notes do not specifically state that she conveyed the three year offer to him, her notes otherwise indicate that a plea offer had been made, and further relate his reaction to the offer. The Court agrees with the State that he could not have reacted to the three year plea offer if Grabner had not first conveyed it to him. The Court also finds

Grabner's testimony to be more credible than the Defendant's. In this connection, the Court notes that her testimony was considerably more detailed than the Defendant's in relating the different plea offers.   And unlike the testimony he presented concerning the plea offers, there were no inconsistencies with the testimony the State presented.   Accordingly, the Court determines that the State presented ample contradictory evidence to rebut the Defendant's evidence, *see* Pennington, and finds by the greater weight of the evidence that Grabner did in fact convey the State's three year plea offer to him.

Based on this finding, the Court concludes that the Defendant has failed to establish a deficient performance by his trial counsel Grabner under the first prong of Strickland. Because the Defendant has failed to establish a deficient performance under the first prong, the Court need not decide [or] address the issue of prejudice under the second prong. *See* Strickland, 104 S. Ct. at 2069 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").   *See also* Waterhouse v. State, 792 So. 2d 1176, 1182 (Fla. 2001) (when the defendant fails to establish either Strickland prong, it is unnecessary for the court to consider the other).

Ex. K at 310-12.   On appeal, the First DCA affirmed without a written opinion.   This constitutes a ruling on the merits and is entitled to AEDPA deference.   *See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

The state court record supports the post-conviction court's findings. In particular, at the evidentiary hearing, defense counsel Grabner testified regarding the plea offers as found by the state post-conviction judge.   Ex. L at 396-401.   Copies of Grabner's notes are also included in the record.

Ex. M at 419, 421.   Although Jones testified that the only plea offer Grabner conveyed to him before trial was one for 15 years in prison, with 5 years' probation, Ex. L at 376-78, the post-conviction trial court judge accepted the testimony of Grabner and specifically found her testimony more credible.   The state post-conviction trial court sits as the fact-finder and determines witness credibility in Rule 3.850 proceedings.   *See, e.g.*, Consalvo v. Sec'y for Dep't of Corr., 664 F. 3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review."); Smith v. State, 697 So. 2d 991, 992 (Fla. 4th DCA 1997); Fla. R. Crim. P. 3.850(d). "Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'"   Consalvo, 664 F.3d at 845 (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983)).

Petitioner Jones has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

### Ground 4:   IAC – Maximum Penalty

In his fourth ground, Petitioner Jones asserts trial counsel provided

ineffective assistance regarding advice about the maximum penalty he

faced.   ECF No. 1 at 11.   Respondent indicates Petitioner raised this

claim in state court as the second ground in his second amended Rule

3.850 motion.   ECF No. 16 at 38; *see* Ex. K at 263.   The state post-

conviction court denied the claim after an evidentiary hearing and made the

following findings:

> The Defendant's second ground is related to his first
> ground.   He argues that his trial counsel Grabner did not
> advise him that he was facing a life sentence at the time of the
> three year plea offer.   He claims that if he had known he was
> facing a life sentence, he would have accepted the offer, the
> State would not have withdrawn the offer, the Court would have
> accepted the offer, and the sentence would have been less
> severe than the life sentence that he received.   The
> Defendant's allegations are sufficient for purposes of <u>Alcorn</u>.
>
> However, at the evidentiary hearing, the Defendant's
> testimony somewhat differed from the allegation in his Second
> Amended Motion.   He did not testify that Grabner never told
> him that he was facing a life sentence, as alleged in the Second
> Amended Motion.   Rather, when asked by his postconviction
> counsel if he was ever told, prior to trial, that he was facing a
> life sentence, the Defendant testified that his counsel told him
> that a life sentence was 25 years.   Thus, he also testified that
> he believed his maximum possible sentence was 25 years.
>
> Grabner testified that at all times, the Defendant's total
> sentence exposure in light of the charges filed against him was

life in prison.   She indicated that it would have been her normal practice to discuss the maximum sentence exposure when discussing a plea offer with a defendant.   Though she acknowledged that [she] did not have a "specific memory" of informing him that he was potentially facing life in prison during the discussion of the earlier plea offers, she stated that it would be unlikely for the issue not to have come up.   She also stated that her notes indicated that she had advised the Defendant of the life sentence later on; specifically, the notes reflect that on October 10, 2011, she advised him that he was likely to get a life sentence if he proceeded to trial.   *See* Notes, State's Exhibit 1.   At the time, there was still a plea offer on the table when she informed the Defendant.   Additionally, she flatly stated that she would never have advised the Defendant that a 25 year sentence is a life sentence.

Grabner's legal secretary, Vicki Rosamond, testified with respect to her September 30, 2011 email to Grabner, in which she had memorialized her telephone conversation with the Defendant.   Rosamond explained that when she receives a telephone call from a defendant, her usual practice is to type up what the defendant said and send an email to that defendant's attorney with the information.   The conversation concerned verifying the last school he attended and ensuring that he knew about his upcoming appointment with Grabner.   In the email, she had put in quotes something that he had said during the conversation.   Rosamond did not have an independent recollection of what [he] had said, but since she had typed it in quotes, she knew that the Defendant had said it.   What the Defendant told her was that he was looking at life in prison, so he would be present at the upcoming appointment even if he had to walk.

As noted, the Defendant's testimony at the evidentiary hearing was consistent with the allegations in his Second Amended Motion.   At the hearing, he testified that Grabner advised him that a life sentence is only 25 years, whereas in his Second Amended Motion, he claimed that he was never told

that he was facing a life sentence.   The Court finds that this inconsistency undermines the Defendant's claim to the extent it is doubtful that the Defendant even carried his burden of proving his claim on his second ground at the evidentiary hearing, see <u>Pennington</u>, particularly since his testimony that Grabner advised him that a life sentence is only 25 years is itself inherently dubious.

In any event, even to assume for the sake of argument that the Defendant carried his burden of proof at the evidentiary hearing, the Court finds that his testimony was amply rebutted by the State's contradictory evidence.   *See* <u>Pennington</u>.   As discussed, Grabner testified that at all times, the Defendant's total sentence exposure in light of the charges filed against him was life in prison.   She also indicated that it would have been her normal practice to discuss the maximum sentence exposure when discussing a plea offer with a defendant. Finally, her notes indicate that on October 10, 2011, she had emphasized to the Defendant that he would likely receive a life sentence if he went to trial.   Grabner's testimony is buttressed by Rosamond.   As noted, Rosamond testified that when the Defendant called her on September 30, 2011, he mentioned that he was facing a life sentence, which clearly establishes that he knew he was facing a life sentence just four days after he had rejected the State's three year plea offer.   In considering Grabner's and Rosamond's testimony in combination, the Court finds by the greater weight of the evidence that Grabner did in fact advise him that he was facing a life sentence, and that he knew he was facing a life sentence at the time the three year plea offer was conveyed to him.

In view of this finding, the Court concludes that the Defendant has failed to establish a deficient performance by his trial counsel Grabner under the first prong of <u>Strickland</u>. Because the Defendant has failed to establish a deficient performance under the first prong, the Court need not decide [or] address the issue of prejudice under the second prong. *See* <u>Strickland</u>, 104 S. Ct. at 2069 ("[T]here is no reason for a

> court deciding an ineffective assistance claim . . . to address
> both components of the inquiry if the defendant makes an
> insufficient showing on one.").   *See also* <u>Waterhouse</u>, 792 So.
> 2d at 1182 (Fla. 2001) (when the defendant fails to establish
> either <u>Strickland</u> prong, it is unnecessary for the court to
> consider the other).

Ex. K at 312-14.   On appeal, the First DCA affirmed without a written

opinion.   This constitutes a ruling on the merits and is entitled to AEDPA

deference.   *See* 28 U.S.C. § 2254(d); <u>Harrington</u>, 562 U.S. at 98-100.

The state court record supports the post-conviction court's finding.

In particular, at the evidentiary hearing, defense counsel Grabner and her

secretary, Vicki Rosamond (spelled "Rossomond" in the transcript), testified

as found by the state post-conviction judge.   Ex. L at 399-401, 409.

Grabner testified she did not advise Jones that a 25-year sentence is a life

sentence.   *Id.* at 401.   Although Jones testified that Grabner told him a life

sentence was 25 years, *id.* at 383, the post-conviction trial court judge

accepted the testimony of Grabner and specifically found her testimony

more credible.   As explained in the analysis of Ground 3, *supra*, the state

post-conviction trial court sits as the fact-finder and determines witness

credibility in Rule 3.850 proceedings.   *See, e.g.*, <u>Consalvo</u>, 664 F. 3d at

845; <u>Smith</u>, 697 So. 2d at 992; Fla. R. Crim. P. 3.850(d).   "Federal habeas

courts have 'no license to redetermine credibility of witnesses whose

demeanor was observed by the state court, but not by them.'"   <u>Consalvo</u>,

664 F.3d at 845 (quoting <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983)).

Petitioner Jones has not shown that the state court's rejection of this

ground involved an unreasonable application of clearly established federal

law or that it was based on an unreasonable determination of the facts.

*See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be

denied.

**<u>Ground 5</u>:   IAC – Competency Determination**
**&**
**<u>Ground 7</u>:   IAC – Competency Hearing**

In his fifth and seventh grounds, Petitioner Jones raises similar

claims, as Respondent indicates, alleging IAC for not moving for a

competency determination or requesting a competency hearing.   ECF No.

1 at 13, 17; *see* ECF No. 16 at 44-45.   Respondent indicates Petitioner

raised these claims in state court in the third ground of his second

amended Rule 3.850 motion.   ECF No. 16 at 45; *see* Ex. K at 263.   The

state post-conviction court denied the claims after an evidentiary hearing

and made the following findings:

> The Defendant argues that his trial counsel Grabner was
> ineffective for failing to move for a competency determination.
> For support, he alleges that he told Grabner that he "heard
> voices in his head," and that he had unspecified "serious mental

problems."   He further alleges that he asked her to obtain his mental health records and then submit them to the Court for a competency determination, but she "refused" to do so.   He urges that if Grabner had acted upon his request, the Court would have had the benefit of his records and then would have found him incompetent to stand trial.

At the evidentiary hearing, the Defendant's testimony was consistent with the allegations in his Second Amended Motion. He testified that he had told Grabner he was hearing voices. His postconviction counsel additionally alluded to the issue of mental retardation at the hearing, an issue that was not alleged in his Second Amended Motion.   However, postconviction counsel did not present any evidence on the issue of mental retardation.

Grabner testified that there were no issues with the Defendant's trial competency in terms of mental health issues. She acknowledged that the Defendant had told her that he could not spell and that reading was difficult.   In working with him, Grabner could tell that he was slow, but she would go over things with him in a way that she thought he could understand and would try to clear up any questions he had.   She indicated that based on his level of education, she would have thoroughly explained any plea offers.   Grabner otherwise stressed that being slow or having a low IQ is not the same as being incompetent.

Additionally, Grabner had "no memory" of the Defendant ever telling her that he was hearing voices.   Grabner's testimony is corroborated by the Defendant's own documentary evidence.   At the continuation of the evidentiary hearing on July 10, 2014, the Defendant entered into evidence a document entitled "State of Florida – Department of Corrections, Psychiatric Evaluation."   *See* Psychiatric Evaluation.   This document is dated January 5, 2012, a date that is after he was tried and convicted.   *See id.*; Judgment and Sentence. According to the Psychiatric Evaluation, the Defendant

"[r]eports that he has had auditory and visual hallucination his whole life but never reported it to anyone."   *See* Psychiatric Evaluation.

The standard for competency to proceed, as set forth in Dusky v. United States, 80 S. Ct. 788 (1960), and codified in Rule 3.211, is "whether the defendant has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and whether the defendant has a rational, as well as factual, understanding of the pending proceedings."   Rule 3.211(a)(1).   *See also* Thompson v. State, 88 So. 3d 312, 319 (Fla. 4th DCA), *review denied*, 107 So. 3d 407 (Fla. 2012).   Rule 3.210(b) provides that trial counsel is only required to have a defendant evaluated for competency if counsel "has reasonable ground to believe that the defendant is not mentally competent to proceed."   Consistent with Rule 3.210(b), in the postconviction context, Thompson states, "To satisfy the deficiency prong [of Strickland] based on counsel's handling of a competency issue, the postconviction movant must allege specific facts showing that a reasonably competent attorney would have questioned competence to proceed."   *Id.* at 319.   Thompson also states that postconviction claims involving incompetence to proceed "focus on actual prejudice, that is, whether the defendant was actually incompetent at the relevant time."   *Id.* at 318.

With respect to the mental retardation aspect of the Defendant's competency claim, it is clear that the Defendant wholly failed to carry his burden of alleging and proving a deficient performance.   According to Thompson, a defendant must allege specific facts showing that a reasonably competent attorney would have questioned competence to proceed.   Thompson, 88 So. 3d at 319.   As discussed, mental retardation was not alleged in his Second Amended Motion, and he presented no evidence that he was mentally retarded at the evidentiary hearing.   Rather, postconviction counsel merely alluded to the issue of mental retardation at the hearing.   The Court would note that Grabner otherwise testified that there

were no issues with the Defendant's competency to stand trial in terms of mental health issues.   She acknowledged that he had told her that he could not spell and that reading was difficult.   She also acknowledged that she could tell that he was slow.   However, she would go over things with him in a way that she thought he could understand, and would try to clear up any questions he had.   Grabner otherwise stressed that being slow or having a low IQ is not the same as being incompetent.

With respect to the Defendant hearing voices, the Defendant did allege that in his Second Amended Motion that he told Grabner that he "heard voices in his head." Additionally, at the evidentiary hearing, his testimony was consistent with his allegations.   The Court will assume for the sake of argument that the Defendant carried his burden of alleging and presenting evidence of a deficient performance of the part of Grabner for failure to seek a competency evaluation after allegedly being informed that he was hearing voices. However, even with that assumption, the Court finds that his testimony was amply rebutted by the State's contradictory evidence.   *See* Pennington.   At the hearing, Grabner countered the Defendant's testimony by testifying that she did not recall the Defendant ever telling her that he was hearing voices.   Her testimony is corroborated by the Defendant's own documentary evidence; specifically the document entitled "State of Florida – Department of Corrections, Psychiatric Evaluation." *See* Psychiatric Evaluation.   As noted, this document is dated January 5, 2012, a date that is *after* he was tried and convicted. *See id.*; Judgment and Sentence.   In the Psychiatric Evaluation, the Defendant "[r]eports that he has had auditory and visual hallucination his whole life *but never reported it to anyone*."   *See* Psychiatric Evaluation (emphasis added).   This document indicates that while the Defendant might have suffered from hallucinations his whole life, he did not report that fact to Grabner.   In resolving the conflict in the testimony, the Court finds Grabner's testimony to be more credible than the Defendant's and gives greater weight to it.   Accordingly, the

> Court finds by the greater weight of the evidence that
> Defendant did not inform Grabner that he "heard voices in his
> head."
>
>         In light of the above findings, the Court concludes that the
> Defendant has failed to establish a deficient performance by his
> trial counsel Grabner under the first prong of Strickland.   *See
> also* Thompson.   Because the Defendant has failed to
> establish a deficient performance under the first prong, the
> Court need not decide [or] address the issue of prejudice under
> the second prong.   *See* Strickland, 104 S. Ct. at 2069 ("[T]here
> is no reason for a court deciding an ineffective assistance claim
> . . . to address both components of the inquiry if the defendant
> makes an insufficient showing on one.").   *See also*
> Waterhouse, 792 So. 2d at 1182 (Fla. 2001) (when the
> defendant fails to establish either Strickland prong, it is
> unnecessary for the court to consider the other).

Ex. K at 314-15, 323.   On appeal, the First DCA affirmed without a written

opinion.   This constitutes a ruling on the merits and is entitled to AEDPA

deference.   *See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

        The state court record supports the post-conviction court's findings.

In particular, as that court found, although Jones testified he explained to

defense counsel Grabner, during the plea negotiations, that he was hearing

voices, Ex. L at 379, Grabner testified that she did not recall Jones ever

telling her he was hearing voices, *id.* at 400-01.   Grabner testified she did

not have any issues with Jones' competency to stand trial:

        Q   Were there any issues with the defendant's competency,
        that you were aware of?

A    No, no.   There were not any issues that I had with his trial competency in terms of mental health issues.

Q    Did he advise you he was hearing voices?

A    No, I have no memory that that was ever told to me by Mr. Jones.

*Id.* at 399-401.   On cross-examination, Grabner testified:

Q    Now, did you have discussions with him regarding his ability to comprehend and mental intellect in any way regarding his ability to understand what you were communicating?

A    I think so, in the sense that I, I noted that at one point he told me that he had trouble, that he couldn't spell, and I think recall him telling me reading is difficult for me, and I had known that he had dropped out of school early.   So in just, in working with him, and we met several times, in talking with him he's obviously slow, you know, and we would go over things and go, you know, it a way that I thought he could understand.   And I always, you know, any questions that he had, I would try to clear up with him.

Q    Did you discover that he was an ESE student?

A    At some point we got records from Mowat and Merritt Brown, I believe he had attended both schools, and they indicated that he was in the dropout program and was possibly an ESE student. . . .

*Id.* at 402-03.   On re-direct, Grabner clarified that "being slow or having a low IQ" is not the same as being incompetent to stand trial.   *Id.* at 406.

*See, e.g.*, <u>Pardo v. Sec'y, Fla. Dep't of Corr.</u>, 587 F.3d 1093, 1100 (11th

Cir. 2009) ("A defendant is competent to stand trial if he possesses (1) sufficient present ability to consult with his attorney with a reasonable degree of rational understanding, and (2) a rational and factual understanding of the proceedings against him." (citing Dusky v. United States, 362 U.S. 402 (1960)); Fla. R. Crim P. 3.211(a)(1).

Moreover, as the state court found, Jones' own evidence, the Psychiatric Evaluation dated January 5, 2012, months after Jones' trial concluded in October 2011, reflects that Jones reported then "that he has had auditory and visual hallucination his whole life *but never reported it to anyone.*"   Ex. M at 464 (emphasis added).   Finally, as with Grounds 3 and 4, *supra*, the post-conviction trial court judge accepted the testimony of Grabner and specifically found her testimony more credible.   *See, e.g.*, Consalvo, 664 F. 3d at 845; Smith, 697 So. 2d at 992; Fla. R. Crim. P. 3.850(d).   *See also, e.g.*, Pardo, 587 F. 3d at 1102 (explaining that defense counsel's "duty was to conduct a reasonable investigation or to make a reasonable decision that an investigation was unnecessary").

Petitioner Jones has not shown that the state court's rejection of the claims in this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable

determination of the facts.    *See* 28 U.S.C. § 2254(d)(1)-(2).    Accordingly,

this ground should be denied.

> **Ground 6**:    **IAC – Lack of Intent**
>         **&**
> **Ground 8**:    **IAC – No Objection to Prosecutor's Comments**
>         **&**
> **Ground 9**:    **IAC – Mitigation Factors**

In Grounds, 6, 8, and 9, Petitioner Jones alleges defense counsel

provided ineffective assistance by not arguing lack of intent, not objecting

to comments by the prosecutor, and not presenting mitigation factors,

respectively.    ECF No. 1 at 15, 19, 21.    As with Ground 2, *supra*,

although Jones presented these claims in his initial Rule 3.850 motion, Ex.

K at 209-40, which the state court struck as facially insufficient, Jones did

not raise these claims in the amended Rule 3.850 motion or second

amended Rule 3.850 motion, for which the state post-conviction trial court

held an evidentiary hearing and on which that court ultimately denied relief.

Accordingly, these claims are unexhausted and procedurally defaulted.

*See* O'Sullivan, 526 U.S. at 842; *see also, e.g.*, McNair, 416 F.3d at 1302;

Smith, 256 F.3d at 1138; Ward, 592 F.3d at 1157.    Jones has not

demonstrated cause and prejudice to excuse the default.

Jones asserts the procedural default should be excused pursuant to

Martinez v. Ryan, 566 U.S. 1 (2012), because his "jailhouse lawyers"

abandoned the claim and Jones is "illiterate" and "unable to read or write."

ECF No. 1 at 15, 19, 21; ECF No. 22 at 9-16.   As Respondent indicates,

however, Jones had the responsibility to ensure his claims remained in

contention when filing the amended post-conviction motions.   Further, at

the evidentiary hearing, while represented by counsel, Jones testified he

prepared the post-conviction motion with assistance from "personnel within

the Department of Corrections."   Ex. L at 376.   He acknowledged three

grounds were presented in the amended motion.   *Id.*   His counsel asked

him at the conclusion of his direct testimony whether there was "anything

else regarding this motion" that counsel had not asked about that Jones

wanted "to let the Court know regarding Ms. Grabner's representation," and

Jones answered, "No, sir, I just think she was against me, because she

never explained it, because of my sex charge and her being a female,

maybe, I don't know."   *Id.* at 384.   He further answered:

> I'm not, I'm not trying to say nothing bad about Ms.
> Grabner, but my life is on the line, Your Honor, and I just want a
> release date from DOC, I don't want, these are my first
> charges, I don't want to die in DOC.   It's a bad place, bad
> charges, to be at.   I ain't never had no DR since I been there.
> Yes, sir, I take that back, I had one DR, that's tampering with a
> lock device.   My roommate was going home, and I took the DR
> for him where he can go home.   And I ain't been I ain't never

been to the box or none of that, sir, I ain't been in trouble in
DOC.   That's it, sir.

*Id*.   Thus, given the opportunity to explain whether there was "anything
else regarding this motion" that was not addressed or presented during his
testimony at the evidentiary hearing, Jones indicated there was not
anything.   This is not a circumstance to which Martinez applies to excuse
the procedural default.   *Cf.* Martinez, 566 U.S. at 17 ("Where, under state
law, claims of ineffective assistance of trial counsel must be raised in an
initial-review collateral proceeding, a procedural default will not bar a
federal habeas court from hearing a substantial claim of ineffective
assistance at trial if, in the initial-review collateral proceeding, there was no
counsel or counsel in that proceeding was ineffective.").   *See, e.g.*, Smith
v. Newsome, 876 F.2d 1461, 1465-66 (11th Cir. 1989) (explaining pro se
petitioner's alleged illiteracy could not constitute cause for state procedural
default where, although petitioner did not raise claim in first state habeas
petition, he did raise it in second state habeas petition).

## Ground 10:   IAC – Cumulative

In his tenth ground, Petitioner Jones asserts a claim of cumulative
IAC.   ECF No. 1 at 23.   As Respondent indicates, Jones did not present
this claim in the state trial court.   ECF No. 16 at 64-65.   In particular,

although Jones included the claim in his original Rule 3.850 motion, the state court struck that motion as facially insufficient and allowed Jones to file an amended motion, as explained previously.   Ex. K at 241.   Jones filed an amended Rule 3.850 motion and a second amended Rule 3.850 motion, but, as with Grounds 2, 6, 8, and 9, *supra*, he did not include this claim.   *Id.* at 258-68.   Thus, as Respondent indicates, Jones abandoned this claim in state court, it is unexhausted and procedurally defaulted, and it should not be considered in federal habeas review.

Moreover, even if the Court considered the claim, it should be denied as the Eleventh Circuit has rejected an argument of cumulative error in the context of IAC claims.   *See* Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009) (explaining that "[t]he Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim" but "the Supreme Court has held, in the context of an ineffective assistance of counsel claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt'" (quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984))).   Finally, as each of the individual IAC grounds fail, this

ground likewise fails.

## Conclusion

Petitioner James Jones is not entitled to federal habeas relief.   The § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   The parties shall make any argument as to

whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.   *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

### **Recommendation**

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).   It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on June 12, 2018.

**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

### <u>NOTICE TO THE PARTIES</u>

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**